United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 11, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 22-33925 |
| RAMSEY WEAVER, LONITA WEAVER, | § | |
| | § | CHAPTER 13 |
| Debtors. | § | |
| | § | |
| JOAN C. ELLIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 23-3118 |
| | § | |
| RAMSEY WEAVER and LONITA | § | |
| WEAVER, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This is an adversary proceeding in which the plaintiff, Joan C. Ellis, seeks money damages for fraud and requests that such damages be deemed non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(B). On October 22, 2025, the Court conducted a one-day trial. For the reasons stated herein, the Court finds that Joan C. Ellis failed to meet her burden of proving the existence of a debt owed to her by Ramsey Weaver and Lonita Weaver and therefore her non-dischargeability claims under §§ 523(a)(2)(A) and (a)(2)(B) are denied as moot for lack of an underlying debt.

### I.  FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact,

it is adopted as such.  This Court made certain oral findings and conclusions on the record.  This Memorandum Opinion supplements those findings and conclusions.  If there is an inconsistency, this Memorandum Opinion controls.

## A.  Background

### i.        Procedural Background

1.  On December 31, 2022, (the "*Petition Date*") Ramsey Weaver ("*Mr. Weaver*") and Lonita Weaver ("*Mrs. Weaver*") (collectively,  "*Debtors/Defendants*") filed for bankruptcy protection under chapter 13 of the Bankruptcy Code[1] initiating the bankruptcy case. [2]

2.  On July 7, 2023, Joan C. Ellis ("*Plaintiff*") filed her notice of removal of a state court case styled as *Ellis v Weaver,* in the 189th District Court of Harris County, Texas, under Cause No 2016-77837 (the "*State Court Lawsuit*") to the instant Court creating the instant adversary proceeding.[3]

3.  On December 28, 2023, Plaintiff filed her "Second Amended Complaint" (the "*Complaint*").[4]

4.  On January 30, 2024, Defendants filed their answer to the Complaint.[5]

5.  On October 22, 2025, the Court conducted a one-day trial and now issues its instant Memorandum Opinion.

### ii.       Summary of Facts

On June 16, 2012, Plaintiff and her cousin, Alfy Alexander ("*Alexander*"), entered into a contract with Defendants entitled "Contract for Deed (Lease Option to Buy)" ("*Contract for Deed*") where Defendants agreed to sell to Plaintiff the real property located at 14906 Sheffield Terrace, Channelview, Texas 77530 (the "*Property*").[6] The parties did not use the services of any

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[2] "Bankr. ECF" refers docket entries made in the Debtor's bankruptcy case, No. 22-33925.  Entries made in Plaintiff's Case number 23-3118 shall take the format of ECF No. __.
[3] ECF No. 1.
[4] ECF No. 19.
[5] ECF No. 24.
[6] ECF No. 35-1 at 5; Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).

attorneys or real estate professionals in connection with entering into the Contract for Deed.[7] Plaintiff moved into the Property in June 2012.[8]

The Contract for Deed provided that the Property would be sold for $75,000, with a $6,000 down payment, with the remaining $69,000 to be financed by the Defendants.[9] Under the Contract for Deed, Plaintiff and Alexander were to make monthly payments of $1,100 for 264 months (22 years).[10] The Contract for Deed was later amended on November 10, 2014, to remove Alexander as a co-buyer of the Property.[11] Plaintiff testified that she made payments under the Contract for Deed from approximately July 1, 2012, through October 1, 2016.[12] The Property was encumbered by a mortgage (the "*Mortgage*") which was serviced by Carrington Mortgage Services, LLC ("*Carrington*"), at the time the parties entered into the Contract for Deed.[13]

The Defendants assert that they disclosed the existence of the Mortgage to Alexander and Plaintiff, while Plaintiff maintains that she was never informed of it and believed the Property was being sold to her free and clear of any encumbrances.[14] At trial, Plaintiff testified that she believed the Property was being sold free and clear of liens because the Defendants represented to her that they "owned their home," which she understood to mean there was no mortgage on the Property.[15] The Defendants, however, testified that they believed both Alexander and Plaintiff were aware of the Mortgage at the time the parties entered into the Contract for Deed.[16] It is undisputed that the existence of the Mortgage was not disclosed in writing in connection with the Contract for Deed.[17]

---

[7] Oct. 22, 2025 Courtroom Trial (Mr. Weaver and Plaintiff testifying).
[8] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[9] ECF No. 35-1 at 5.
[10] ECF No. 35-1 at 5.
[11] ECF Nos. 31-1 at 2; 31-1.
[12] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying); 35-1 at 2.
[13] ECF No. 35-4 at 9, 12; Oct. 22, 2025 Courtroom Trial (Mr. Weaver testifying).
[14] ECF No. 35-1 at 1–3; 35-15; 35-14 at 2.
[15] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[16] Oct. 22, 2025 Courtroom Trial (Defendants testifying).
[17] Oct. 22, 2025 Courtroom Trial (Mr. Weaver testifying).

Plaintiff asserts that on two occasions she requested a payoff amount of the outstanding balance due under the Contract for Deed so that she could pay it off through a third-party loan.[18] Plaintiff asserts that both times she received an inflated payoff amount from the Defendants.[19] Specifically, Plaintiff asserts that according to her calculations, "the principle balance would have been below $50,000.00" and that on "both occasions the payoff amount was well above the principal amount" of the Contract for Deed.[20] The first payoff statement, dated September 4, 2015, reflected an amount of $85,900.60.[21] According to Plaintiff, the receipt of the September 4, 2015 payoff was the first time she learned that the Property was encumbered by the Mortgage.[22] The second payoff statement, dated November 4, 2016, reflected an amount of $77,060.70.[23]

Plaintiff stopped making payments on the Contract for Deed on November 1, 2016 because she believed she was a victim of fraud.[24] Specifically, she asserts that although she made payments on the Contract for Deed for approximately four years, none of the payments reduced the financed balance of $69,000 under the Contract for Deed.[25] Plaintiff believed that Defendants defrauded her by not disclosing the Mortgage and providing her with inflated payoff amounts.[26] As a result, she filed the State Court Lawsuit against the Defendants.[27]

Defendants and Plaintiff entered into a subsequent agreement on December 29, 2016, titled "One to Four Family Residential Contract (Resale)" (the "*Short Sale Contract*").[28] Under the Short

---

[18] ECF No. 35-1 at 3.
[19] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[20] ECF No. 35-1 at 3.
[21] ECF No. 35-1 at 18.
[22] ECF No. 35-1 at 3.
[23] ECF No. 35-1 at 20.
[24] ECF No. 35-1 at 3; Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[25] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[26] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[27] ECF No. 1.
[28] ECF No. 35-10.

Sale Contract, the Defendants agreed to sell the Property to Plaintiff for $69,000.[29] The Short Sale Contract included a short sale addendum, which clearly stated that the sale was a short sale and required the lienholder's consent.[30]

 Plaintiff refused to perform on the Short Sale Contract because Defendants requested Plaintiff to dismiss the State Court Lawsuit against them.[31] The Defendants contend that the Short Sale Contract was valid and signed by all parties but that Plaintiff failed to perform her obligations under the contract by refusing to purchase the Property.[32] Plaintiff, on the other hand, maintains that the Short Sale Contract was never valid and was instead an attempt to defraud her of the Property she had purchased.[33]

 At some time after the Short Sale Contract fell through, Carrington sold the Property through a foreclosure although the parties have not identified who purchased the Property through the foreclosure.[34] According to Plaintiff, the Property was sold at the foreclosure for approximate $100,000.[35] Mrs. Weaver testified that she did not know the foreclosure sale price, and the Defendants testified that they never received any proceeds from the sale.[36]

 Plaintiff removed the State Court Lawsuit to this Bankruptcy Court on July 7, 2023, initiating this adversary proceeding.[37] On December 28, 2023, Plaintiff filed her Complaint seeking to establish that a debt is owed to her by the Defendants due to fraud committed by Defendants in

---

[29] ECF No. 35-10 at 2.
[30] ECF No. 35-10 at 11.
[31] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[32] Oct. 22, 2025 Courtroom Trial (Defendants testifying).
[33] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[34] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[35] ECF No. 38 at 9.
[36] Oct. 22, 2025 Courtroom Trial (Defendants testifying).
[37] ECF No. 1.

connection with the Contract for Deed and to have that debt declared non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(B).[38]

## II.   CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[39] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[40] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (I) this proceeding contains core matters, as it primarily involves proceedings concerning dischargeability of debt.[41] This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[42]  This Court may only hear a case in which venue is proper.[43]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Defendants' main bankruptcy case is pending in this Court and therefore, venue of this proceeding is proper.

### B.  Constitutional authority to enter a final judgment

---

[38] ECF No. 19.

[39] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).

[40] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[41] *See* 11 U.S.C. § 157(b)(2)(A) & (I).

[42] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)).

[43] 28 U.S.C. § 1408.

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[44]  The adversary proceeding pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final judgment here.[45]  Alternatively, this Court has constitutional authority to enter a final judgment because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[46]  In its Comprehensive Scheduling, Pre-trial & Trial Order, the Court set March 1, 2024 as the deadline for Plaintiff and Debtors to file a notice of nonconsent to the entry of final orders by this Court on all non-core matters.[47]  Plaintiff never objected to this Court's constitutional authority to enter a final order or judgment, and Defendants filed a notice of consent to entry of a final order or judgment by this Court.[48]  These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

### III.    Credibility of witnesses

---

[44] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[45] *See, e.g., Badami v. Sears* (*In re AFY, Inc.*), 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West* (*In re Davis*), No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that Stern invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' Stern expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend Stern's limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).

[46] *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

[47] ECF No. 27.

[48] ECF Nos. 38 at 4; 37 at 1.

It is the Court's duty to assess and weigh the credibility of witnesses.[49] At trial, the Court heard testimony from three witnesses: (a) Plaintiff; (b) Mr. Weaver; and (c) Mrs. Weaver. At trial, each witness responded to questions clearly, completely, and directly. [50] Thus, the Court finds that each witness is credible and gives equal weight to the testimony of each witness.

## IV.   ANALYSIS

Plaintiff seeks money damages against Defendants and requests that such damages be deemed non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(B).[51]

### A.   Standard for non-dischargeability

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[52] The United States Supreme Court has distinguished between "false pretenses and representations" and "actual fraud," and recognized two distinct paths for nondischargeability under § 523(a)(2)(A).[53] As to § 523(a)(2)(B), the bankruptcy code provides that:

> (a)A discharge under section . . .  1328 (b) of this title does not discharge an individual debtor from any debt – (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (B) use of a statement in writing – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive . . . .

---

[49] *O'Connor v. Burg* (*In re Burg*), 641 B.R. 120 (Bankr. S.D. Tex. 2022); *In re Bigler LP*, 458 B.R. 345, 367 (Bankr. S.D. Tex. 2011) (citing *Port Arthur Towing Co. v. John W. Towing, Inc*, 42 F.3d 312, 318 (5th Cir. 1995)).
[50] *See, e.g.*, *In re Ali*, 2015 Bankr. LEXIS 2443, 2015 WL 4611343 at *4 (Bankr. W.D. Tex. July 23, 2015) (analyzing the clarity, completeness, and quality of witness responses in order to make credibility determinations).
[51] ECF No. 19.
[52] *See* 11 U.S.C. § 523(a)(2)(A).
[53] *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 136 S. Ct. 1581, 1586, 194 L.Ed.2d 655 (2016).

Additionally, there are two distinct issues to consider in the dischargeability analysis: (a) the establishment of the debt itself, under relevant state or non-bankruptcy federal law; and (b) a determination as to the nature of the debt—i.e. whether it is dischargeable or nondischargeable.[54] Thus, if the Court finds that Plaintiff has not met her burden of establishing a debt, the Court need not consider whether Plaintiff established that the elements of §§ 523(a)(2)(A) and (a)(2)(B) are met because there would be no debt to discharge.[55]

## B.      Forfeiture of Federal Rule of Bankruptcy Procedure 4007(c) limitation defense

As a preliminary matter, the Court, *sua sponte*, must consider the application of Federal Rule of Bankruptcy Procedure ("*Rule*") 4007(c). Rule 4007(c) states that "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a) . . . ."[56] In the instant case, Debtors filed a petition under chapter 13 of the Bankruptcy Code on December 31, 2022.[57] The first date set for the meeting of creditors was February 8, 2023, and the deadline to file a dischargeability complaint was April 10, 2023.[58] Plaintiff initiated this adversary proceeding on July 7, 2023, well outside the April 10, 2023 deadline.[59]

In *Kontrick v. Ryan*, the Supreme Court held that the deadline for objecting to a debtor's discharge under Rule 4004(a) was not jurisdictional.[60] The *Kontrick* Court reasoned that

---

[54] *Resolution Trust Corp. v. McKendry* (*In re McKendry*), 40 F.3d 331 (10th Cir. 1994) (noting that there are two distinct issues in a nondischargeability proceeding); *Winn v. Holdaway* (*In re Holdaway*), 388 B.R. 767, 782 (Bankr. S.D. Tex. 2008) ("The underlying cause creating the pre-petition debt must not be confused with the characterization of debts excepted from discharge."); *Estate of Smith v. Smith* (*In re Smith*), 495 B.R. 291, 297 (Bankr. N.D. Miss. 2013) (holding that a claim must first be established under relevant state or non-bankruptcy law and only then does the federal nondischargeability issue come into play).
[55] *See Husky Int'l Elec., Inc. v. Ritz* (*In re Ritz*), 832 F.3d 560, 562 (5th Cir. 2016).
[56] FED. R. BANK. P. 4007(c).
[57] Bankr. ECF No. 1. Citations to main bankruptcy Case No.  22-33925 shall take the form of "Bankr. ECF No.__"
[58] Bankr. ECF Nos. 15; 31.
[59] *See* ECF No. 1.
[60] 540 U.S. 443, 447 (2004).

"essentially the same time prescriptions apply" under Rule 4004(a) and 4007(c).[61] Since *Kontrick* was decided, several bankruptcy courts in the Fifth Circuit have held that the deadline for objecting to discharge under §§ 523(a)(2), (a)(4), and (a)(6) is similarly non-jurisdictional.[62] Because the time limit is not jurisdictional, "a debtor may forfeit his right to assert such limitation as a defense if he or she does not 'raise the Rule's time limitation before the bankruptcy court reaches the merits of the creditor's objection to discharge.'"[63] Defendants never objected to Plaintiff's untimely filing of her Complaint.

Accordingly, Defendants have forfeited their right to assert a time limitation under Rule 4007(c) as a defense.

### C.    The Complaint

In her Complaint, Plaintiff seeks to establish a debt owed to her by Defendants and to obtain a determination from the Court that such debt is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(B).[64] Specifically, the Complaint brings the following causes of actions that are allegedly non-dischargable pursuant to §§ 523(a)(2)(A) and (a)(2)(B): (1) Claim for refund of all payments under the Texas Property Code ("*Tex. Prop. Code*"); (2) Claim under the Deceptive Trade Practices Act; (3) Fraud in a real estate transaction under Chapter 27 of the Texas Business & Commercial Code ("*Tex. Bus. & Com. Code*"); (4) Conspiracy to commit fraud in a real estate

---

[61] *Id.* at 448 n.3.

[62] *See, e.g.*, *Owen v. Miller (In re Miller)*, 333 B.R. 368, 370–71 (Bankr. N.D. Tex. 2005); *In re Walls*, 496 B.R. 818, 828 (Bankr. N.D. Miss. 2013).

[63] *La. Workforce Comm'n v. Campbell (In re Campbell)*, 2017 Bankr. LEXIS 1860, at *4 (Bankr. W.D. La. July 5, 2017) (quoting *Kontrick*, 540 U.S. at 447). *See also Lab. Corp. of Am. v. Avalos (In re Avalos)*, 361 B.R. 129, 131 n.3 (Bankr. S.D. Tex. 2007) ("Because of the similarity between Rule 4004(a) and Rule 4007(c), the Court finds it is appropriate to look to cases construing Rule 4007(c) to determine the limits of Rule 4004(a)."); *Kontrick v. Ryan*, 540 U.S. 443, 448 n.3, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004) ("Because of the practical identity of the time prescriptions for objections to the discharge of any debts under § 727(a) and for objections to the discharge of particular debts under § 523(c), courts have considered decisions construing Rule 4007(c) in determining whether the time limits delineated in Rules 4004(a) and (b) may be forfeited.").

[64] *See* ECF No. 19.

transaction; (5) Fraudulent inducement; (6) Trespass to try title and suit to quiet title; and (7) Intentional infliction of emotional distress.[65]

**D.      Establishment of the underlying debt.**

The Plaintiff has the initial burden of establishing the underlying debt.[66] Texas law applies because all the parties reside in Texas and the alleged misconduct by Defendants in connection with the Contract for Deed occurred in Texas.[67]

**1.   Claim for refund of all payments under the Tex. Prop. Code**

Chapter 5, Subchapter D of the Tex. Prop. Code imposes various conditions and disclosure requirements on sellers entering into contracts for deed.[68] Tex. Prop. Code. § 5.085(a) provides that a potential seller of real estate may not sell the real estate if it is encumbered by a mortgage, subject to expectations detailed in the Tex. Prop. Code. One exception is that a seller may sell real property subject to a mortgage if, among other things, the seller "notifies the purchaser in a separate written disclosure" of the mortgage.[69] The disclosure must disclose particular details of the mortgage as outlined in Tex. Prop Code. § 5.085(b)(3)(A), which includes the monthly payments due on the loan and outstanding balance of the loan.[70]

A violation of Tex. Prop Code. § 5.085 entitles the purchaser to:

> *cancel and rescind* the executory contract and receive from the seller [and]
>       **(A)** the *return of all payments* of any kind made to the seller under the contract; and

---

[65] ECF No. 19.
[66] *Winn v. Holdaway* (*In re Holdaway*), 388 B.R. 767, 782 (Bankr. S.D. Tex. 2008).
[67] *See ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 62 (S.D. Tex. 2007) ("In applying the Restatement's 'most significant relationship test', this Court considers the following factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered."); *Enigma Holdings, Inc. v. Gemplus Int'l S.A.*, No. 3:05 CV 1168 B, 2006 WL 2859369, at *7 (N.D. Tex. Oct. 6, 2006) ("Texas courts decide choice of law issues by using the Restatement's 'most significant relationship' test."); ECF No. 19.
[68] See Tex. Prop. Code §§ 5.061-.085.
[69] Tex. Prop. Code §§ 5.085 (b)(3).
[70] Tex. Prop. Code §§ 5.085 (b)(3)(A)(ii),(iii).

**(B)** *reimbursement* for:
**(i)** any payments the purchaser made to a taxing authority for the property; and
**(ii)** the value of any improvements made to the property by the purchaser.[71]

Thus, if the seller fails to comply with disclosure requirements related to property that is encumbered by an existing lien, the buyer can "cancel and rescind" the contract for deed and receive from the seller "all payments of any kind made to the seller under the contract" and reimbursement for the value of any improvements made to the property by the buyer.[72]

It is undisputed that Defendants failed to provide Plaintiff with written disclosure of the Mortgage when the parties entered into the Contract for Deed.[73] Therefore, Plaintiff is entitled to damages under Tex. Prop Code. § 5.085, but only to the extent she has provided sufficient evidence demonstrating her damages. In her Complaint, Plaintiff asserts that she made $63,200 in payments under the Contract for Deed and spent $58,000 on repairs.[74] Plaintiff offers no evidence supporting these assertions other than her own testimony and affidavits.[75] No receipts or other documentation showing the payments or repairs were admitted into evidence. The testimony at trial also conflicts regarding the total amount Plaintiff paid. Mr. Weaver testified that approximately $29,000 of the payments Defendants received came from Alexander rather than from Plaintiff, whereas Plaintiff claims she made all of the payments.[76]

Additionally, the Texas Supreme Court instructs that although a buyer is entitled to a full refund of all payments made to the seller under a contract for deed when the seller fails to provide required disclosures, "cancellation and *rescission* of a contract also requires that the buyer restore

---

[71] Tex. Prop. Code § 5.085(c) (emphasis added).
[72] *Morton v. Nguyen*, 412 S.W.3d 506, 510 (Tex. 2013).

[73] *See* Oct. 22, 2025 Courtroom Trial (Mr. Weaver testifying).
[74] ECF No. 19 at 18.
[75] *See* Oct. 22, 2025 Courtroom Trial (Plaintiff testifying); ECF No. 35-1 at 2.
[76] Oct. 22, 2025 Courtroom Trial (Mr. Weaver and Plaintiff testifying).

to the seller the value of the buyer's occupation of the property."[77] In other words, the cancellation-and-rescission remedy under Tex. Prop. Code § 5.085 "contemplates mutual restitution of benefits among the parties. . . . [and] the buyers . . . must restore to the seller supplemental enrichment in the form of rent for the buyers' interim occupation of the property upon cancellation and rescission of the contract for deed."[78] Here, Plaintiff lived in the Property from approximately October 2016 to February 2019 without remitting payment to Defendants.[79]

Because Plaintiff has not provided sufficient documentary evidence establishing the calculation of the refund owed after accounting for the value of her occupancy, the Court finds that she has failed to prove the amount of any refund due under Tex. Prop. Code § 5.085 for payments Plaintiff made under the Contract for Deed. As to the repairs Plaintiff claims to have made to the Property, she has provided no receipts or other documentary evidence showing the amounts she spent or whether the alleged repairs increased the Property's value. The evidence also shows that at least some of the purported repairs were made to fix damage caused by Plaintiff or her occupants. For example, Plaintiff testified that her son damaged the garage of the Property when he accidentally drove a car into it.[80]  As such, because Plaintiff has not provided sufficient evidence establishing the value of any alleged improvements she made to the Property, the Court finds that she has failed to prove the amount of any refund due under Tex. Prop. Code § 5.085 for improvements to the Property she claims to have made.

Accordingly, because Plaintiff has failed to provide sufficient evidence to establish the amount of any refund due under Tex. Prop. Code § 5.085 for either the payments she made under

---

[77] *Morton v. Nguyen*, 412 S.W.3d 506, 512 (Tex. 2013) (Emphasis in original).
[78] *Id.* at 508.
[79] ECF No. 35-14 at 4; Oct. 22, 2025 Courtroom Trial (Mr. Weaver testifying).
[80] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).

the Contract for Deed or the improvements she claims to have made to the Property, she has not

met her burden to obtain a refund under Tex. Prop. Code § 5.085.

### 2. Claim under the Deceptive Trade Practices Act

Plaintiff asserts that Defendants are liable for claims under Section 17 of the Tex. Bus. &

Com. Code (the "*Deceptive Trade Practices Act*" or "*DTPA*").[81]  To prevail on an action under the

DTPA, the plaintiff must demonstrate that (1) they are a "consumer" as defined in the DTPA and

(2) the defendant committed a "a false, misleading, or deceptive act or practice" within the

meaning of the DTPA.[82]

Tex. Bus. & Com. Code 17.45(4) defines "consumer" as "an individual . . . who seeks or

acquires by purchase or lease, any goods or services" but expressly excludes "a business consumer

that has assets of $25 million or more, or that is owned or controlled by a corporation or entity

with assets of $25 million or more." Under the DTPA, "goods" includes real property, and

"business consumer" is defined as "an individual, partnership, or corporation who seeks or

acquires by purchase or lease, any goods or services for commercial or business use."[83] The

Plaintiff is an individual who sought to purchase the Property from Defendants for personal

residential use.[84] Accordingly, the Court finds that Plaintiff is an individual who sought to purchase

"goods," does not fall within the definition of a "business consumer," and is therefore a

"consumer" under the DTPA.[85]

A violation of Tex. Prop. Code. § 5.085 is "a false, misleading, or deceptive act or practice

within the meaning of [the DTPA], and is actionable in a public or private suit brought under [the

---

[81] ECF No. 19.
[82] *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 538 (Tex. 1981); Tex. Bus. & Com. Code §§ 17.46(a), 17.45(4).
[83] Tex. Bus. & Com. Code §§ 17.45(1), 17.45(10).
[84] Oct. 22, 2025 Trial (Plaintiff testifying); ECF No. 35-1 at 5.
[85] Tex. Bus. & Com. Code 17.45(4).

DTPA]."[86]  As explained *supra*, Defendants committed a violation of Tex. Prop. Code. § 5.085 when they failed to provide written disclosure of the Mortgage to Plaintiff.[87] Therefore, Defendants committed "a false, misleading, or deceptive act or practice" within the meaning of the DTPA which is "actionable in a public or private suit."[88] Violations produce liability for "actual damages," and "knowing" violations allow for "additional damages" which could raise the total damage award to as much as three times the amount of actual damages.[89] The DTPA permits recovery of actual damages equal to the entire loss incurred due to the deceptive practice.[90] "Two measures of damages are recognized under the DTPA: the 'out of pocket' measure and the 'benefit of the bargain' measure. These measures of damages are not exclusive; other measures of damages are permitted to ensure the plaintiff is made whole."[91] The "out of pocket" measure is the "difference between the value of that which was parted with and the value of that which was received."[92] The "benefit of the bargain" measure is the "difference between the value as represented and the value actually received."[93]

As for the out of pocket measure, Plaintiff asserts that she sustained damages equal to the payments she made under the Contract for Deed and the money she spent on repairs to the Property.[94] First, as explained *supra*, Plaintiff has not provided sufficient evidence to demonstrate the amount of money she spent on repairs she made on the Property.[95] As to payments made under the Contract for Deed, Mr. Weaver admitted at trial that from approximately July 2014 to October

---

[86] Tex. Prop. Code. § 5.085(c)(1).
[87] *See supra* discussion at Section IV.D.1.
[88] Tex. Prop. Code. § 5.085(c)(1).
[89] *Streber v. Hunter*, 221 F.3d 701, 727 (5th Cir. 2000).
[90] *Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex. 1985).
[91] *Haynes & Boone v. Bowser Bouldin, Ltd*., 864 S.W.2d 662 (Tex. App. 1993).
[92] *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex. 1988).
[93] *Id.*
[94] ECF No. 19 at 18.
[95] *See supra* discussion at Section IV.D.1.

2016, Plaintiff made payments under the contract for Deed in the amount of $1,100 per month that totaled $29,700.[96] Nonetheless, Plaintiff received value for these payments in the form of the fair rental value of the Property for the months she lived there while making payments, as well as for the period from approximately October 2016 to February 2019, during which she continued residing on the Property without remitting payment to Defendants.[97] Plaintiff has not shown that the total payments Plaintiff made exceeded the value Plaintiff received under the Contract for Deed by virtue of residing in the Property. As such, Plaintiff has not demonstrated that the value she parted with was greater than the value Plaintiff received under the Contract for Deed and is therefore not entitled to any out of pocket damages under the DTPA.

As for the benefit of the bargain measure, the Contract for Deed provided that once Plaintiff paid the purchase price of $75,000, Defendants would be required to turn over legal title to the Property free and clear of liens.[98] The Contract for Deed also allowed Plaintiff to prepay the outstanding balance of the Contract for Deed without prepayment penalty.[99] Plaintiff and Alexander made a $6,000 down payment at the time they entered into the Contract for Deed.[100] As to the remaining $69,000 balance, payments of $1,1000 per month were made under the Contract for Deed from approximately July 1, 2012, through October 1, 2016.[101] Defendants breached the Contract for Deed by twice issuing payoff statements based on the outstanding balance of the Mortgage rather than the outstanding balance of the Contract for Deed, and by representing to Plaintiff that the Mortgage payoff, instead of the amount due under the Contract for Deed, was required for the Plaintiff to obtain clear title.[102] Specifically, the payoff dated September 4, 2025

---

[96] Courtroom trial (Mr. Weaver testifying).
[97] ECF No. 35-14 at 4; Oct. 22, 2025 Courtroom Trial (Mr. Weaver testifying).
[98] ECF No. 35-1 at 5.
[99] ECF No. 35-1 at 6.
[100] Courtroom trial (Plaintiff testifying).
[101] Courtroom trial (Plaintiff and Mr. Weaver testifying).
[102] Courtroom trial (Mr. Weaver testifying); ECF Nos. ECF No. 35-1 at 18, 20.

and the payoff dated November 4, 2016 both show that the balance reflects the outstanding Mortgage balance, and are not based on the balance due under the Contract for Deed.[103]

When a seller of real estate fails to sell real estate to the buyer under the terms agreed upon, the damages awarded to the buyer under the benefit of the bargain measure is equal to the difference between the contract price of the property and the market value of the property at the time of breach.[104] The plaintiff has the burden of proving the property's market value at the time of the breach, and if relying on a subsequent sale to determine that value, the plaintiff must also show that the sale occurred within a reasonable time.[105] Here the price of the Property under the Contract was $75,000 with $6,000 paid as a down payment and the remaining $69,000 to be financed.[106] Plaintiff failed to provide an accounting supported by evidence showing the outstanding balance on the Contract for Deed as of October 1, 2016, when she stopped making payments. Thus, Plaintiff has not shown what the correct payoff amount to acquire the Property would have been. Plaintiff has also not presented evidence to demonstrate that the fair market value of the Property at the time of the breach exceeded the contract price. Although Plaintiff asserts that the Property was sold at foreclosure for approximately $100,000 but she offered no documentary evidence to substantiate this assertion.[107] Therefore, because there is insufficient evidence to demonstrate the outstanding balance under the Contract for Deed and the market price

---

[103] ECF Nos. ECF No. 35-1 at 18, 20.
[104] *Vulcan Iron Works Co. v. Roquemore*, 175 F. 11, 19 (5th Cir. 1909) ("Under the general rule that the measure of damages is the difference between the agreed price and the market value, the plaintiff gets more damages if his contract is a good one -- one advantageous to him -- for a breach of it than he would get if the contract was not a good one for him. . . . [I]f [the nonbreaching party] agreed to pay a sum greatly in excess of the value, he loses nothing by the breach and abandonment of the contract."); *Balfour Beatty Rail v. Kan. City S. Ry. Co.*, 173 F. Supp. 3d 363, 395 (N.D. Tex. 2016); *Rescue Concepts Inc. v. HouReal Corp.*, 696 S.W.3d 127, 146 (Tex. App. 2022) ("In breach of contract cases involving real estate, the measure of damages is the difference between the contract price and the property's market value at the time of the breach.").
[105] *Barry v. Jackson*, 309 S.W.3d 135, 141 (Tex. App. 2010).
[106] ECF No. 35-1 at 5.
[107] Courtroom trial (Plaintiff testifying).

of the Property at the time of breach, Plaintiff has not met her burden of proving she is entitled to damages under the benefit of the bargain measure under the DTPA.

Because Plaintiff has failed to meet her burden of proving the damages she suffered from Defendants' failure to provide written disclosure of the Mortgage, which constituted "a false, misleading, or deceptive act or practice" under the DTPA, she is awarded no damages under the DTPA.

### 3. Fraud under Texas Law

Plaintiff brings claims for fraud under several theories of Texas law. Specifically, Plaintiff asserts three separate causes of action alleging that: (1) Defendants committed fraud in a real estate transaction under Tex. Bus. & Com. Code § 27.01; (2) Defendants and Carrington conspired to commit fraud in a real estate transaction; and (3) Defendants and Carrington engaged in fraudulent inducement that harmed Plaintiff.[108] The Court will address each in turn.

### a. Fraud in a real estate transaction under Tex. Bus. & Com. Code § 27.01

Tex. Bus. & Com. Code § 27.01(a) provides for what constitutes "fraud in real estate and stock transactions":

> **(a)** Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
> **(1)** false representation of a past or existing material fact, when the false representation is
> **(A)** made to a person for the purpose of inducing that person to enter into a contract; and
> **(B)** relied on by that person in entering into that contract; or
> **(2)** false promise to do an act, when the false promise is
> **(A)** material;
> **(B)** made with the intention of not fulfilling it;
> **(C)** made to a person for the purpose of inducing that person to enter into a contract; and
> **(D)** relied on by that person in entering into that contract.

---

[108] ECF No. 19 at 8, 12, 20.

Tex. Bus. & Com. Code § 27.01(b) allows for a defrauded person to recover actual damages: "A person who makes a false representation or false promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for actual damages."[109]

A defrauded person may also be entitled to exemplary damages if "actual awareness" is present:

> (c) A person who makes a false representation or false promise with actual awareness of the falsity thereof commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.
>
> (d) A person who (1) has actual awareness of the falsity of a representation or promise made by another person and (2) fails to disclose the falsity of the representation or promise to the person defrauded, and (3) benefits from the false representation or promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.[110]

Finally, Tex. Bus. & Com. Code § 27.01(e) allows defrauded persons to recover reasonable and necessary attorney fees and legal expenses: "Any person who violates the provisions of this section shall be liable to the person defrauded for reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court."[111]

### i. Whether there was a false representation of a past or existing material fact that Plaintiff relied upon

Plaintiff asserts that Defendants committed fraud under Tex. Bus. & Com. Code § 27.01 in connection with the Contract for Deed because Defendants made a false representation that the

---

[109] Tex. Bus. & Com. Code § 27.01(b).
[110] Tex. Bus. & Com. Code § 27.01(c),(d).
[111] Tex. Bus. & Com. Code § 27.01.

Property was not encumbered by a mortgage with the intent to defraud Plaintiff out of the Property and profit from the false representation.[112]

"Failing to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent. Whether such a duty to speak exists is a question of law."[113] "In Texas, a seller of real estate is under a duty to disclose material facts that would not be discoverable by the exercise of ordinary care and diligence on the part of the purchaser, or that a reasonable investigation and inquiry would not uncover."[114]

Tex. Prop. Code § 5.016 imposes a duty on the seller of residential real property to provide a written disclosure to the buyer identifying any existing mortgage or lien on the property before the conveyance.[115] Specifically, the seller must disclose the existence and key terms of any recorded lien in writing at least seven days before the sale or execution of a binding contract for the property.[116]

The Contract for Deed did not disclose any existing mortgage, although the Property was, in fact, encumbered by the Mortgage serviced by Carrington.[117] Tex. Prop. Code § 5.016 requires that any such mortgage be disclosed in writing. By failing to provide written disclosure of the Mortgage at the time Plaintiff and Defendants entered into the Contract for Deed, Defendants falsely represented that the Property was unencumbered by a mortgage. Plaintiff testified that she would not have purchased the Property had she known of the Mortgage and that her search of the

---

[112] ECF No. 19 at 3, 11.

[113] *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 678 (Tex. 2009). *See also Smithkline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995) ("We have held in the context of fraud that when a duty to speak exists, silence may be as misleading as the positive misrepresentation of existing facts.").

[114] *Marshall v. Kusch*, 84 S.W.3d 781, 786 (Tex. App. 2002).

[115] Tex. Prop. Code § 5.016.

[116] Tex. Prop. Code § 5.016.

[117] ECF No. 35-1 at 5; Oct. 22, 2025 Courtroom Trial (Mr. Weaver testifying).

property records in Harris County, Texas revealed no such mortgage.[118] Accordingly, the Court finds that Plaintiff relied on Defendants' false representation that the Property was free of any mortgage when entering into the Contract for Deed.[119]

### ii. Whether the false representation was made with intent to induce

For a party to be liable for fraud under Tex. Bus. & Com. Code § 27.01, the false representation by the defendant must have been "made to a person for the purpose of inducing that person to enter into a contract."[120] A party's intent is assessed at the time the representation is made, but it may be inferred from the party's subsequent acts after the representation is made.[121] Because "intent is a fact question uniquely within the realm of the trier of fact" and depends heavily on witness credibility and the weight of testimony, its determination lies particularly within the province of the factfinder.[122] Moreover, because "intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence." [123]

Here, the evidence shows that Defendants did not fail to disclose the Mortgage in writing for the purpose of inducing Plaintiff to enter into the Contract for Deed, but rather as a result of a genuine mistake. Defendants credibly testified that they believed Plaintiff was aware of the Mortgage.[124] Mr. Weaver testified that he orally informed Alexander, before execution of the Contract for Deed, that the Property was subject to the Mortgage and that he intended to use the payments received under the Contract for Deed to continue making payments to Carrington to prevent foreclosure.[125] Thus, although Defendants failed to satisfy their duty to disclose the

---

[118] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).

[119] *Woodlands Land Dev. Co., L.P. v. Jenkins*, 48 S.W.3d 415, 425 (Tex. App. 2001).

[120] Tex. Bus. & Com. Code § 27.01(a)(1)(A).

[121] *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986).

[122] *Yeldell v. Goren*, 80 S.W.3d 634, 637 (Tex. App. 2002).

[123] *Id.*

[124] Oct. 22, 2025 Courtroom Trial (Mr. Weaver and Mrs. Weaver testifying).

[125] Oct. 22, 2025 Courtroom Trial (Mr. Weaver testifying).

Mortgage in writing, there is no evidence that this omission was intended to conceal the existence

of the Mortgage. Indeed, Defendants were unsophisticated parties who had never sold a home

before and did not use legal or real estate professionals when entering into the Contract for Deed

and therefore, were not aware that oral disclosure of the Mortgage was insufficient to meet the

disclosure requirements under Texas law.[126]

Moreover, there is no evidence that Defendants profited from their failure to disclose the

Mortgage in writing. Defendants credibly testified that all payments they received from Alexander

and Plaintiff were used to make payments on the Mortgage, and that they ceased making the

Mortgage payments only after Plaintiff stopped making payments under the Contract for Deed.[127]

Plaintiff also resided in the Property from approximately October 2016 to February 2019 without

making any payments to Defendants.[128] Additionally, although Plaintiff asserts that the Property

was sold at a foreclosure sale for approximately $100,000, she presented no documentary

evidence, other than her own affidavit, to substantiate that claim.[129] In any event, Defendants

testified that they did not receive any proceeds from the foreclosure sale, and no evidence was

offered to show that they did.[130] The record instead supports that Defendants used all payments

received from Plaintiff to satisfy obligations under the Mortgage.

Given that Defendants did not attempt to conceal the existence of the Mortgage, were

unaware of their duty to disclose the Mortgage in writing,  and did not profit from their failure to

disclose it in writing, the Court finds that Defendants did not make a false representation that the

---

[126] Oct. 22, 2025 Courtroom Trial (Mr. Weaver and Mrs. Weaver testifying).
[127] Oct. 22, 2025 Courtroom Trial (Mr. Weaver testifying).
[128] Oct. 22, 2025 Courtroom Trial (Mr. Weaver testifying).
[129] Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[130] Oct. 22, 2025 Courtroom Trial (Mr. Weaver and Mrs. Weaver testifying).

Property was unencumbered by the Mortgage for the purpose of inducing Plaintiff to enter into Contract for Deed.

Because Plaintiff failed to show that the Defendants made a false representation with the intent to induce Plaintiff into entering into the Contract for Deed, the Plaintiff's claims for damages under Tex. Bus. & Com. Code § 27.01 fails.

### b. Civil conspiracy to commit fraud in a real estate transaction and fraud in the inducement

Plaintiff pleads that Defendants conspired with Carrington to defraud Plaintiff.[131] The necessary elements of civil conspiracy under Texas law are: (1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.[132]

As explained *supra*, although Defendants failed to provide written disclosure of the Mortgage to Plaintiff, Defendants did not fail to provide the written disclosure with the intent to induce Plaintiff into entering into the Contract for Deed.[133] As such, Plaintiff has failed to show that Defendants have committed fraud in a real estate transaction.[134] Additionally, Plaintiff has provided no evidence whatsoever of any false representation made by Carrington or fraudulent intent by Carrington. Nor is there any evidence that there was any meeting of the mind between Defendants and Carington to commit an unlawful objective. Because Plaintiff has failed to show that either Carrington or Defendants agreed to or intended to engage in fraud, her claim for conspiracy to commit fraud in a real estate transaction fails.

### c. Fraudulent inducement

---

[131] ECF No. 19 at 14.
[132] *Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).
[133] *See supra* discussion at Section IV.D.3.a.ii.
[134] Tex. Bus. & Com. Code § 27.01(a)(1)(A).

Plaintiff also pleads a separate cause of action for fraudulent inducement. The elements of a claim for fraudulent inducement are "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury."[135] Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract.[136] "That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties."[137] Whether a claim is brought under fraud or fraudulent inducement affects the measure of damages that would be recoverable.[138] Specifically, the "benefit-of-the-bargain damages are not available for fraud that induces a nonbinding contract; rather, if there is a defect in contract formation, the only potentially viable measure of fraud damages is the out-of-pocket measure."[139]

Although plead a as a separate cause of action, Plaintiff's claim for fraudulent inducement is based on substantially similar allegations as the allegations in her claim for civil conspiracy to defraud. Specifically, Plaintiff alleges that Carrington and Defendants conspired to defraud her in connection with the Contract for Deed.[140] As stated *supra*, Plaintiff has not demonstrated fraudulent intent by either Defendants or Carrington, and therefore, her claim for fraudulent inducement fails.[141]

### 4. Trespass to try title and suit to quiet title

Plaintiff brings claims for trespass to try title and a suit to quiet title to the Property.[142]

---

[135] *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 557 (Tex. 2019).
[136] *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).
[137] *Id.*
[138] Zorrilla v. Aypco Constr. II, LLC, 469 S.W.3d 143, 153 (Tex. 2015).
[139] *Id.*
[140] ECF No. 19 at 21.
[141] *See supra* discussion at Section IV.D.3.b.
[142] ECF No. 19 at 11, 28.

### 1.  Trespass to try title

A trespass-to-try-title action "is the method of determining title to lands"[143] and the exclusive remedy for resolving overarching claims to legal title.[144] In a trespass-to-try-title action, a plaintiff may prove legal title by establishing: "(1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations (i.e., adverse possession); or (4) possession that has not been abandoned."[145]

Plaintiff has failed to show that she has title to the Property. Under the Contract for Deed, the Defendants agreed to provide seller financing to Plaintiff for the purchase of the Property.[146] In Texas, "[a] contract for deed, unlike a typical secured transaction involving a deed of trust, is a financing arrangement that allows the seller to maintain title to the property until the buyer has paid for the property in full."[147] Here, it is undisputed that Plaintiff never made the full payments under the Contract for Deed.[148] Instead, Plaintiff maintained that she was *willing* to pay off the remaining balancing on the Contract for Deed but never alleges that she in fact satisfied the remaining balance.[149] Therefore, the Plaintiff has failed to show that she has legal title to the Property and Plaintiff's claim for trespass to try title fails.

### 2.  Suit to quiet title

Under Texas law, "[a] suit to remove cloud from title or suit to quiet title is different from an action in trespass to try title."[150] "A suit in trespass to try title is statutory and accords a legal remedy, while a suit to remove cloud or to quiet title accords an equitable remedy."[151] More

---

[143] Tex. Prop. Code § 22.001.
[144] *Brumley v. McDuff*, 616 S.W.3d 826, 832 (Tex. 2021)
[145] *Id.*
[146] ECF No. 35-1 at 5.
[147] *Morton v. Nguyen*, 412 S.W.3d 506, 509-10 (Tex. 2013).
[148] *See* Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[149] *See* Oct. 22, 2025 Courtroom Trial (Plaintiff testifying).
[150] *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App. 1977).
[151] *Id.*

specifically, a suit to quiet title requires the allegations of an adverse claim by a defendant and requires that the defendants adverse claim is invalid.[152]   The elements of the cause of action to quiet title are that the plaintiff must show: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable."[153] Here, the Plaintiff has not shown that Defendants claim any interest in the Property. In fact, Defendants testified at trial that they seek no interest in the Property.[154] Therefore, Plaintiff's claim to quiet title to the Property fails.

### 5.  Intentional Infliction of Emotional Distress

Plaintiff asserts that Defendants intentionally inflicted emotional distress on Plaintiff by defrauding her in connection with the Contract for Deed.[155] The Texas law tort of intentional infliction of emotional distress requires proof of the following elements: "(1) the defendant acted intentionally or recklessly; (2) the conduct was 'extreme and outrageous'; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe."[156]

First, there is no evidence that Defendants acted intentionally or recklessly to cause emotional harm. "Intentional infliction of emotional distress requires either that the actor intends to cause severe emotional distress or severe emotional distress is the primary risk created by the actor's reckless conduct."[157] Plaintiff alleges that Defendants defrauded Plaintiff out of the Property through non-disclosure of the Mortgage.[158] Even if this was true, this does not show that the alleged fraud was done with intent to cause emotional harm to Plaintiff. Moreover, Defendants

---

[152] *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App. 2012).
[153] *Id.*
[154] Oct. 22. 2025 Courtroom Trial (Mr. Weaver and Mrs. Weaver testifying).
[155] ECF No. 19 at 19.
[156] *Finlan v. Dall. Indep. Sch. Dist.*, 90 S.W.3d 395, 411 (Tex. App. 2002).
[157] *Toles v. Toles*, 45 S.W.3d 252, 259 (Tex. App. 2001).
[158] ECF No. 19.

credibly testified that they believed Plaintiff was aware of the Mortgage at the time the parties entered into the Contract for Deed and therefore, there is no evidence that Defendants failed to disclose the Mortgage with awareness that their nondisclosure could create a high degree of risk of harm to Plaintiff.[159] As such, the Court finds that the Defendants did not intentionally or recklessly cause emotional harm to Plaintiff.

Second, Defendant's conduct does not rise to the level of being "extreme and outrageous."[160] Under Texas law, for conduct to be actionable under the tort of intentional infliction of emotional distress, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."[161] A failure to disclose a mortgage in writing, without more, does not approach that standard. Therefore, the Court finds that Defendants did not engage in "extreme and outrageous" conduct.

Third, Plaintiff offers no competent evidence that Defendants' actions caused her severe emotional distress. "Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it" and includes "all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry."[162] Plaintiff testified that she was very upset and angry about what she believed was fraud by the Defendants.[163] However, "[m]ere worry, anxiety, vexation, embarrassment, or anger are not enough, and there must be a high degree of mental pain and distress."[164] Plaintiff's assertions of mental anguish, inconvenience, and emotional pain are vague, conclusory and unsupported by medical or corroborating

---

[159] *Toles*, 45 S.W.3d at 259 ("An actor is reckless when he knows or has reason to know of facts that create a high degree of risk of harm to another and deliberately proceeds to act in conscious disregard of, or indifference to, that risk."); Oct. 22. 2025 Courtroom Trial (Mr. Weaver and Mrs. Weaver testifying).
[160] *Finlan*, 90 S.W.3d at 411.
[161] *Gte Sw. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).
[162] *Id.* at 618.
[163] Oct. 22. 2025 Courtroom Trial (Plaintiff testifying).
[164] *Cunningham v. Waymire*, 612 S.W.3d 47, 65 (Tex. App. 2019).

evidence.[165] Therefore, the Court finds that Plaintiff has not met her burden of showing that she suffered severe emotional distress.

Accordingly, Plaintiff has not established the elements of intentional infliction of emotional distress, and thus, her claim for intentional infliction of emotional distress fails. Because each of Plaintiff's underlying causes of actions against Defendants fail, Plaintiff has not demonstrated that Defendants owe an underlying debt to Plaintiff.

### E.      Determination of the dischargeability of debt

Here, Plaintiff has not demonstrated that Defendants owe an underlying debt to Plaintiff. Therefore, this Court need not consider whether any debt owed to Plaintiff is non-dischargeable under §§ 523(a)(2)(A) and (a)(2)(B).[166] Accordingly, the Court finds that Joan C. Ellis failed to meet her burden of proving the existence of a debt owed to her by Ramsey Weaver and Lonita Weaver and therefore her non-dischargeability claims under §§ 523(a)(2)(A) and (a)(2)(B) are denied as moot for lack of an underlying debt.[167]

### V.      CONCLUSION

A judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED December 11, 2025**

_____
**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**

---

[165] *See Gte Sw.*, 998 S.W.2d at 619; *Cunningham*, 612 S.W.3d at 66 (relying on "clear and specific" evidence in determining whether plaintiff demonstrated severe emotional distress).
[166] *Parker v. Miller* (*In re Miller*), 589 B.R. 550, 560-61 (Bankr. S.D. Miss. 2018) ("[A] bankruptcy court cannot declare a debt nondischargeable until the creditor establishes the existence and amount of that debt.").
[167] *See In re Ritz*, 832 F.3d at 562 (noting on remand from the U.S. Supreme Court that if "there is no debt to discharge[,] the question of the deniability of a discharge under § 523(a)(2) is moot").